## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEGAN STUMPF** | ) **CIVIL ACTION NO.:** |
| | ) |
| **Plaintiff** | ) **CLASS ACTION COMPLAINT** |
| | ) |
| **VERSUS** | ) **Judge:** |
| | ) |
| **TOYOTA MOTOR SALES, U.S.A., INC. and** | ) **Mag. Judge:** |
| **TOYOTA MOTOR NORTH AMERICA, INC.** | ) |
| | ) |
| **Defendants** | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CLASS ACTION COMPLAINT

Plaintiff, **MEGAN STUMPF**, on behalf of herself and all others similarly situated alleges as follows:

### INTRODUCTION

1.     Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc., (hereinafter occasionally referred to collectively as "Toyota" or "Defendants") have manufactured and sold vehicles in the United States, including in Louisiana, with defective paint since at least 2008, and continue to do so today.  Such vehicles include the 4Runner, Camry, Camry Hybrid, Avalon, Avalon Hybrid, Corolla, Avalon, RAV4, RAV4 EV, Scion IQ, Scion XB, Lexus GX470, and Highlander.

2.     While Toyota has instituted recalls for certain model years of the 4Runner, Camry, Camry Hybrid, Avalon, Avalon Hybrid, Corolla, Avalon, RAV4, RAV4 EV, Scion IQ, Scion XB, Lexus GX470, no recall has been put in place for the Highlander.

3.     Had Plaintiff and Class members known of the defect, paint which prematurely

peels and looks unsightly, they would not have purchased their vehicles or would have paid much less for their vehicles.

4.      Moreover, Plaintiff and Class members are left to pay out of pocket to repair the defective paint since Toyota is not placing Highlander models in an extended warranty program. Additionally, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in aesthetic appeal and unsightly spots of missing paint which also could lead to rust and structural issues.

5.      As a result, Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles in Louisiana and in the United States for violation of federal law and for violations of Louisiana law.  Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of Toyota related to the defective paint and its unlawful conduct as alleged herein.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction under 28 U.S.C. § 1332.  Additionally, this Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C §1711 *et seq.*, because the aggregate amount in controversy exceeds $5,000,000.00 exclusive of costs and interest, the proposed Class consists of 100 or more members, and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims.  28 U.S.C § 1367.

7.      Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District.  Plaintiff, **MEGAN STUMPF** resides in this District and purchased the vehicle at issue in this District.

**PARTIES**

8.     Plaintiff, **MEGAN STUMPF** is an individual of the full age of majority residing in New Orleans, Louisiana who purchased a 2013 Highlander SE from Bohn Brothers Toyota in Harvey, Louisiana, an authorized Toyota dealership.  The Highlander contains defective Blizzard Pearl paint.  Plaintiff still owns this vehicle.

9.     Toyota Motor North America, Inc. is an automobile design, manufacturing, distribution, and/or service corporation doing business within the United States, including the State of Louisiana, with its headquarters in Texas.  Toyota Motor North America, Inc. designs, develops, manufactures, markets, sells leases, warrants, services, and repairs passenger vehicles, including the Affected Vehicles described herein.

10.     Toyota Motor Sales, U.S.A., Inc., is a corporation doing business in all 50 states (including the District of Columbia) and is domiciled in California, with its principal place of business located in Texas.  At all times relevant to this action, Toyota manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Toyota Highlander brand name throughout the United States.  Toyota and/or its agents designed, manufactured, and installed the paint in the Affected Vehicles.

**FACTS**

11.     Plaintiff brings this action for herself and for all persons in the State of Louisiana who purchased or leased model year 2007 through 2019 Toyota Highlander vehicles which contained the original factory applied Blizzard Pearl or Super White exterior paint colors (collectively referred to as "Affected Vehicles" throughout this Complaint) designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendants in the United

States.

12.     Defendants are in the business of designing, developing, manufacturing, selling, leasing, and warranting vehicles to consumers across the globe, including in the United States and in the State of Louisiana.

13.     Defendants claim and advertise to their customers that they design, develop, manufacture, sell, lease, and warrant vehicles of outstanding quality and value.1

The Toyota Way



The way we work

How do we create some of the most advanced, reliable and safe vehicles? It starts with our manufacturing principles and management philosophy. We're always looking for ways to improve our operations, always challenging ourselves to innovate, always looking to collaborate, always improving each day in everything we do.

14.     Defendants offer many vehicle models for consumers to choose from under the

---

1 Toyota Website, https://www.toyota.com/usa/our-story/index.html (*last visited* July 21, 2021).

Toyota brand.

15.    Upon information and belief, sometime before 2007, Defendants began designing, developing, manufacturing, marketing, selling, leasing, and warranting vehicle models containing the original factory applied exterior paint colors Blizzard Pearl and Super White.

16.    Upon information and belief, and from reference to Toyota's own press releases and extended warranty programs, the original factory applied exterior paint colors Blizzard Pearl and                    Super                    White                    are                    defective.



Toyota Motor Sales, USA, Inc.
6565 Headquarters Drive
Plano, TX 75024
(469) 292-4000

Original Publication Date: December 4, 2019

To:    All Toyota Dealer Principals, General Managers, Service Managers, and Parts Managers

## CUSTOMER SUPPORT PROGRAM ZKG

**Phase 2 – Customer Renotification and Repair Phase**
**Repair is Now Available**

Multiple Models and Model Years
Vehicles Painted with *Blizzard Pearl (070)* or *Super White (040)* Paint Color
Coverage for Peeling of Factory-Applied Paint

| Model / Years | Production Period | Approximate Total Vehicles |
|---|---|---|
| 2008 – 2015  4Runner | Late December 2007 – Late May 2015 | 73,860 |
| 2008 – 2017  Avalon | Early January 2008 – Late May 2017 | 86,560 |
| 2013 – 2017  Avalon Hybrid | Late May 2012 – Late May 2017 | 13,800 |
| 2008 – 2017  Camry | Early January 2008 – Late February 2017 | 555,700 |
| 2008 – 2017  Camry Hybrid | Early January 2008 – Late February 2017 | 47,430 |
| 2009 – 2019  Corolla | Late November 2007 – Late September 2018 | 580,700 |
| 2008 – 2017  RAV 4 | Early January 2008 – Early September 2017 | 332,400 |
| 2012 – 2014  RAV 4 EV | Late July 2012 – Late August 2014 | 1,110 |
| 2011 – 2015  Scion iQ | Late September 2010 – Late September 2014 | 3,170 |
| 2008 – 2015  Scion xB | Mid-January 2007 – Late December 2015 | 44,210 |

In our continuing efforts to ensure the best in customer satisfaction, Toyota is announcing a Customer Support Program to provide coverage for peeling of certain colors of factory-applied paint.

2

17.     Specifically, the Toyota vehicles with Blizzard Pearl or Super White paint experience premature paint peeling on the exterior metal body panels.

18.     Toyota has previously acknowledged the problem as a manufacturing defect.

19.     A letter to affected customers stated, "The covered condition may occur when sunlight over time degrades the adhesion between the factory applied primer coat layer and the base metal electrodeposition layer causing the paint to peel from the metal body part."

20.     However, Plaintiff never received a letter from Toyota because Highlander models are not including in the extended warranty program despite the Highlander models containing the exact same Blizzard Pearl and/or Super White paint which was covered on the 4Runner, Camry HV, Camry, Corolla, Avalon, RAV4, Scion IQ, Scion XB, Lexus GX470.

21.     On or around, November 23, 2013, Plaintiff purchased a new 2013 Toyota Highlander SE with Blizzard Pearl paint from Bohn Brothers Toyota in Harvey, Louisiana.  The vehicle bears VIN: 5TDZK3EH7DS134766.  The 2013 Toyota Highlander SE's port was Princeton, IN.  The 2013 Toyota Highlander SE's plant was TMMI.

22.     Plaintiff's 2013 Toyota Highlander SE has experienced the same premature paint peeling which Toyota is covering for other models.

---

2 NHTSA Website, https://static.nhtsa.gov/odi/tsbs/2019/MC-10170749-9999.pdf, (*last visited* July 21, 2021).

23.     Photos of the peeling paint are on this page and the following two pages:







24.     Plaintiff has made several attempts to have the peeling paint repaired through Toyota; however, Toyota will not repair the paint through any extended warranty program and will require Plaintiff to pay for the paint repairs "out of pocket."

25.     Toyota has acknowledged the peeling paint is not caused by rock chips or other wear and tear.

26.     Toyota has acknowledged the peeling paint is the same paint that is covered by an

extended warranty for other models.

27.    Plaintiff would not have purchased her vehicle if she knew about this hidden peeling paint defect.

## CLASS ACTION ALLEGATIONS

### A.    Definition of the Classes

28.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes (collectively, the "Classes") because the class is so numerous that joinder of all members is impracticable; there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; the representative parties will fairly and adequately protect the interest of the class; and the claims of the representative parties are typical of the claims of the class.

### 1.    Nationwide Class Under the Magnuson - Moss Warranty Act

All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: All persons or juridical entities who purchased or leased a 2007 through 2019 Highlander vehicle containing the original factory applied Blizzard Pearl or Super White exterior paint color. Also excluded from the Class is any parent company, subsidiary or affiliate of Toyota, all officers and directors who are or have been employed by defendant during the relevant period, and all judges and justices assigned to hear any aspect of this case.

### 2.    Louisiana Class for Violations of Louisiana Law

All persons or entities who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: All persons or juridical entities who purchased or leased a 2007 through 2019 Highlander vehicle in Louisiana containing the original factory applied Blizzard Pearl or Super White exterior paint color. Also excluded from the Class is any parent company, subsidiary or affiliate of Toyota, all officers and directors who are or have been employed by defendant during the relevant period, and all judges and justices assigned to hear any aspect of this case.

B.      **The Prerequisites to Rule 23(a) Are Satisfied**

1.      **Numerosity**

29.     The Classes are comprised of thousands of members geographically dispersed throughout the United States and Louisiana are so numerous that joinder of all members is impracticable.  While the precise number of members of the classes are unknown to Plaintiff, members of the Classes can be identified from records maintained by Toyota and/or its agents.

2.      **Commonality**

30.     Questions of law and fact common to all members of the Classes predominate over any questions affecting only individual members.  Among the common questions are the following:

    (a)    whether Toyota engaged in the conduct alleged herein;

    (b)    whether Toyota designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States and Louisiana;

    (c)    whether the exterior paint on the Affected Vehicles is a defect;

    (d)    whether the defective vehicles were sold with the paint defect;

    (e)    whether a reasonable consumer would consider the paint defect or its consequences to be material;

    (f)    whether Toyota designed, manufactured, marketed and distributed Affected Vehicles with defective paint;

    (g)    whether Toyota's conduct violates state and federal laws as asserted herein;

    (h)    whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

(i)     whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, restitution or injunctive relief;

(j)     whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount;

(k)     Whether defendants knew of the paint defect but failed to disclose the problem and its consequences to consumers;

(l)     Whether defendants discovered the paint defect, and what, if anything, they did in response;

(m)     Whether defendants' conduct violates the Louisiana Products Liability Act and other Louisiana laws; and

(n)     whether the Plaintiff and the other Class members experienced out of pocket losses as a result of the peeling paint defect and the amount of those losses.

### 3.    Typicality

31.    Plaintiff has claims that are typical of the claims of other members of the Classes because, among other things, all members of the Classes were comparably injured through Toyota's wrongful conduct as described herein.

### 4.    Adequacy

32.    Plaintiff will fairly and adequately represent and protect the interests of the Classes in that he has no interests that are antagonistic to or which irreconcilably conflict with those of other members of the Classes. Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

**C.      This Action May Be Maintained as a Class Action**

**1.      The Requirements of Rule 23(b)(3) are Satisfied**

33.      As noted above, there are numerous questions of law and fact common to the

which predominate over any questions affecting only individual members.  Moreover, a class

action is superior to all other available methods for the fair and efficient adjudication of this

controversy.  Such treatment will permit a large number of similarly situated, geographically

dispersed persons or entities to prosecute their common claims in a single forum simultaneously,

efficiently, and without unnecessary duplication of evidence, effort or expense that numerous

individual actions would engender.  The benefits of proceeding through the class mechanism,

including providing injured persons or entities a method for obtaining redress on claims that could

not practicably be pursed individually, substantially outweighs potential difficulties in

management of this class action.

**2.      The Requirements of Rule 23(b)(3) are Satisfied**

34.      Toyota has acted or refused to act on grounds generally applicable to Plaintiff and

the other members of the Classes, thereby making appropriate final injunctive relief and

declaratory relief, as described below, with respect to the Class as a whole.

## CAUSES OF ACTION

### MAGNUSON - MOSS WARANTY ACT (15 U.S.C. § 2301 *et seq.*)

(Nationwide Class)

35.      Plaintiff incorporates herein by reference, as though fully set forth at length, each

and every allegation and statement contained in the foregoing paragraphs.

36.      This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, et. seq.

by virtue of 15 U.S.C. § 2310(d).

37.     Plaintiff and all similarly situated individuals are "consumers" within the meaning of the Magnuson - Moss Warranty Act, 15 U.S.C. § 2301(3).

38.     Toyota is a "supplier" and "warrantor" within the meaning of the Magnuson - Moss Warranty Act, 15 U.S.C. § 2301(4) - (5).

39.     The vehicles in question manufactured by Toyota are each a "consumer product" within the meaning of the Magnuson - Moss Warranty Act, 15 U.S.C. § 2301(1).

40.     Plaintiff and all similarly situated have a cause of action as a result of the damages they have incurred based on the facts described above and by the failure of Toyota - the warrantor - to comply with a written or implied warranty.  15 U.S.C. § 2301(d)(1).

41.     Toyota's implied warranties are covered under the Magnuson - Moss Warranty Act, 15 U.S.C. § 2301(7).

42.     Toyota breached these implied warranties by, among other things, providing the Affected Vehicles in a manner: (a) that was not of merchantable quality; (b) that presented an unreasonable risk of peeling paint; (c) that was not fit for the ordinary purpose for which these vehicles are used; and (d) that was not fully operational or reliable.

43.     As a result of Toyota's breach of implied warranties, Plaintiff and those similarly situated suffered economic losses, including cost of repair, diminution in the value and other economic damage and loss.

44.     Plaintiff and those similarly situated individuals are entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## BREACH OF CONTRACT

(Louisiana Class)

45.     Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

46.     Plaintiff pleads her claim for breach of contract in the alternative to her claim for unjust enrichment.

47.     Toyota's misrepresentations and omissions alleged herein, including Toyota's failure to disclose the peeling paint as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of the vehicles in question.

48.     Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased their vehicles, would not have purchased or leased these vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain peeling paint.  Accordingly, Plaintiff and those similarly situated putative class members overpaid for the Affected Vehicles and did not receive the benefit of their bargain.

49.     Each and every sale or lease of such vehicle constitutes a contract between Toyota and the purchaser or lessee.  Toyota breached these contracts by selling or leasing Plaintiff and the other similarly situated putative class members defective vehicles and by misrepresenting or failing to disclose the paint defect, and thus less valuable, than vehicles that do not have the defective paint.

50.     As a direct and proximate result of Toyota's breach of contract, Plaintiff and those similarly situated should have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages,

and other damages allowed by law.

## NEGLIGENT MISREPRESENTATION

(Louisiana Class)

51.     Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

52.     In making misrepresentations regarding the paint quality of the Affected Vehicles, Toyota was acting in the course of its regular business, and in relation to transactions in which it has a pecuniary interest.

53.     The information that Toyota provided regarding the paint quality was false.

54.     Toyota intended that Plaintiff and those similarly situated consumers would be guided by and rely on such representations in the course of making a decision to purchase one of the Affected Vehicles.

55.     Toyota failed to exercise reasonable care in ensuring that the Affected Vehicles could and actually did have quality paint, and failed to exercise reasonable care in representing the paint quality with the Affected Vehicles.

56.     Plaintiff and those similarly situated were reasonable and justified in relying on Toyota's representations about the Affected Vehicles.

## BREACH OF EXPRESS WARRANTY

(Louisiana Class)

57.     Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

58.     This claim is brought by Plaintiff on behalf of herself individually and the other Class members.

59.     At all relevant times hereto, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Affected Vehicles.  Defendants knew or should have known the specific use for which the Affected Vehicles were purchased.

60.     Defendants designed, developed, manufactured, marketed, sold leased, warranted, and promoted the Affected Vehicles as a vehicle that was of good quality, durable, and functional.

61.     The foregoing advertisements, promotions, recommendations, representations, and/or statements made by Defendants became part of the basis for the Plaintiff's purchase and use of the vehicle from Defendants, thus creating an express warranty that the vehicle would conform to the recommendations, representations, and/or statements.

62.     Notwithstanding the foregoing warranties, Plaintiff's vehicle contained a severe paint defect and was unreasonably fit for its intended or reasonably foreseeable use.

63.     Defendants breached the foregoing express warranties that Plaintiff's vehicle was fit for use as a vehicle of good quality, durability, and functionality.

64.     As a direct and proximate result of the breach of the express warranty by Defendants, Plaintiff sustained loss of money, loss of property, and/or diminished value of her vehicle.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

(Louisiana Class)

65.     Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

66.     This claim is brought by Plaintiff on behalf of herself individually and the other Class members.

67.     At all relevant times hereto, Defendants were the manufacturer, distributor,

warrantor, and/or seller of the Affected Vehicles.  Defendants knew or should have known the specific use for which the Affected Vehicles were purchased.

68.     There was an implied warranty by Defendants that the Affected Vehicles, and any parts thereof, were merchantable and fit for the purpose for which they were sold/. The Affected Vehicles, however, are not fit for their ordinary purpose because the Affected Vehicles contained the paint defect at the time of the sale and/or lease.

69.     The Affected Vehicles are not fit for the purpose of providing a durable, functional, and reliable vehicle because of the paint defect.

70.     Defendants impliedly warranted that the Affected Vehicles were of a merchantable quality and fit for such use.  This implied warranty included, *inter alia*, a warranty that the Affected Vehicles and exterior paint manufactured, supplied, distributed, leased and/or sold by Defendants were reliable, functional, and durable, and would not experience the paint defect described herein.

71.     Contrary to the applicable implied warranties, the Affected Vehicles and their exterior paint at the time of the sale and thereafter were not fit for their ordinary and intended purpose.  Instead, the Affected Vehicles contain a severe paint defect.

72.     At all relevant times hereto, Plaintiff used her vehicle in a manner that was intended and/or reasonably foreseeable by Defendants.

73.     Examination of the Affected Vehicles by Plaintiff before purchase and/or use would not have revealed or made obvious the unfitness of the Affected Vehicles.

74.     Defendants breached the implied warranty of merchantability, and Plaintiff's injuries and damages were a direct and proximate result of the breach of such implied warranty by defendants.

75.     As a direct and proximate result of the breach of the implied warranty by

Defendants, Plaintiff sustained loss of money, loss of property, and/or loss of value of her vehicle.

## DESIGN DEFECT

### (Louisiana Class)

76.    Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

77.    This claim is brought by Plaintiff on behalf of herself individually and the other Class members.

78.    At all relevant times hereto, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Affected Vehicles which contained a severe paint defect.

79.    Plaintiff avers that an alternative design of the metal, paint, and their chemical properties was capable of preventing Plaintiff's damages.

80.    Plaintiff avers that exterior paint of the Affected Vehicles was defective, and the likelihood that its defective design would cause Plaintiff's damages outweighed any burden on defendants to design, manufacture, distribute, handle, promote, lease, and/or sell an alternative and safer design.

81.    As a direct and proximate result of Defendants' actions, Plaintiff sustained loss of money, loss of property, and/or loss of value to her vehicle.

## REDHIBITION

### (Louisiana Class)

88.    Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

89.    This claim is brought by Plaintiff on behalf of herself individually and the other Class members.

90.     At all relevant times hereto, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Affected Vehicles which contained a severe paint defect.

91.     Defendants as manufacturers and vendors are liable to Plaintiff under the law of redhibition (Louisiana Civil Code Article 2509 as a bad faith seller and Louisiana Civil Code Article 2520 for economic loss *et seq.*).

## LOUISIANA UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW

(Individual Claim Under La. R.S. 51:1401, e*t seq.*)

92.     Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

93.     This claim is brought by Plaintiff on behalf of himself individually.

94.     Toyota and Plaintiff are "persons" as that term is defined by La. R.S. 51:1401, e*t seq.*

95.     Plaintiff is a "consumer" as that term is defined by La. R.S. 51:1401, e*t seq.*

96.     Toyota engaged in "trade," "commerce," or "consumer transactions" as those terms are defined by La. R.S. 51:1401, e*t seq.*

97.     The Louisiana Unfair Trade Practices Act (LUTPA) prohibits unfair or deceptive acts.  La. R.S. 51:1401, e*t seq.*

98.     Toyota sold Affected Vehicles in Louisiana and throughout the United States during the relevant period.

99.     Toyota violated the Louisiana Unfair Trade Practices Act (LUTPA) when it represented, through advertising, warranties, and other express representations, that the Affected Vehicles had characteristics and benefits that they did not actually have.

100.     Toyota violated the Louisiana Unfair Trade Practices Act (LUTPA) when it represented, through advertising, warranties, and other express representations, that the Affected Vehicles were of a particular standard or quality when they were not.

101.     Toyota violated the Louisiana Unfair Trade Practices Act (LUTPA) by failing to place Highlanders with defective paint into an extended warranty program.

102.     Toyota's violations occurred in connection with its conduct of trade or commerce in Louisiana and throughout the United States.

103.     Toyota's violations caused the Plaintiff to purchase his vehicle, which he would not otherwise have purchased had he known the true nature, quality and characteristics of the Affected Vehicles.

104.     Toyota willfully and knowingly violated the Louisiana Unfair Trade Practices Act with the intent to deceive and mislead Plaintiff and other consumers and to induce them to purchase Affected Vehicles at higher prices, which did not match the Affected Vehicles' true value.

105.     As a result of Toyota's unlawful business practices, Plaintiff is entitled to an award for his actual damages, treble damages, attorneys' fees and costs pursuant to La. R.S. 51:1401, *et seq*.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in his favor and against Toyota, as follows:

A.     Certification of the proposed Classes in accordance with Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, including appointment of Plaintiff's counsel as Class Counsel;

B.     An order temporarily and permanently enjoining Toyota from continuing

the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    A judgment against Toyota and in favor of Plaintiff and the class she seeks to represent for costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E.    An order requiring Toyota to pay both pre- and post- judgment interest on any amounts awarded;

F.    An award of costs and attorneys' fees; and

G.    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

MARTZELL BICKFORD & CENTOLA
**LAWRENCE J. CENTOLA, III (#27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

LILLIS LAW FIRM


   **/s/ Michael Lillis**
**MICHAEL E. LILLIS (#33245)**
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:     (504) 581-9065
Facsimile:     (504) 581-7635

**COUNSEL FOR MEGAN STUMPF**
**And All Others Similarly Situated**